**LEHMAN et al. v. NAPIER et al.**

Civ. 1–154.

United States District Court
S. D. Iowa, Central Division.
Oct. 30, 1951.

Howard L. Bump of Des Moines, Iowa, and Charles F. Short, Jr., of Chicago, Ill., for the defendant, L. O. Napier et al.

A. J. Myers of Abramson & Myers, and Ben B. Hockenberg, Des Moines, Iowa, for the respondents Lehman and Fifield.

RILEY, District Judge.

This is an action by plaintiffs, A. W. Lehman and R. G. Fifield, respectively citizens of Iowa and Minnesota, against L. O. Napier and two partnerships in both of which he is a general partner. The citizenship and place of business of defendants is Illinois. The action is here by removal from the District Court of Polk County, Iowa.

The matter in controversy is the alleged breach by defendants of a written contract executed by plaintiff and by defendant Napier for the two partnerships on March 15, 1950, because of which plaintiffs in separate divisions seek damages and a full accounting.

The defendant Napier has filed his individual motion to dismiss or alternatively to transfer the case to the U. S. District Court for the Northern District of Illinois, pursuant to Sec. 1404(a), Title 28 U.S.C.A. claiming that the contract imposes no du-

314

ties or obligation on him personally, nor individually may he be required to account, and asserting the forum of transfer to be the appropriate forum.

The defendant partnerships move to quash the service and dismiss but do not ask for transfer, urging the service upon defendant Napier to be ineffective as to them because they are not licensed in Iowa, had no authorized agents here, that Napier had no authority to accept service, that the contract is to be performed in Illinois and that in that State a partnership is not a legal entity apart from the members. Both motions are supported by the affidavit of defendant Napier. Plaintiffs have filed a resistance to both motions also supported by affidavit. The several affidavits emphasize the factors of convenience because of records, availability of witnesses and other means of proof.

In this case service was had in Iowa upon the two defendant partnerships by personally serving L. O. Napier, who is a general partner, and upon Napier himself. The petition to remove is that of Napier alone, but it brings the case here as to all parties defendant.

■■ Under the laws of Illinois a partnership is not distinct from and independent of the persons composing it. Abbott v. Anderson, 265 Ill. 285, 106 N.E. 282, L.R.A.1915F, 668. In Iowa, a partnership is a legal entity, can be sued as such, and a judgment obtained against it may be enforced against partnership property and that of any partner served or appearing in the suit. Rule 4, Iowa Rules of Civil Procedure. A partnership may be brought into court in Iowa by personal service made as provided in Rule 56 of the Iowa Rules of Civil Procedure, which provides for such service thus: "(f) Upon a partnership, or an association suable under a common name, or a domestic or foreign corporation, by serving any present or acting or last known officer thereof, or any general or managing agent, or any agent or person now authorized by appointment or by law to receive service of original notice, or on the general partner of a partnership."

■ The record discloses L. O. Napier to be a general partner. Service upon him as a general partner in Iowa was effective to confer jurisdiction on the Iowa court as to both the partnerships and him as a member and as an individual. The court must find that such service was accomplished, that removal here was timely, and that because of the requisite diversity and amount in controversy this court has jurisdiction of all of the named defendants and of the subject matter.

It follows that the motions to dismiss and to quash should be and are denied. See in this connection the opinion of my able predecessor, Charles A. Dewey, Judge, in Western Mut. Fire Ins. Co. v. Lamson Bros. & Co., D.C., 42 F.Supp. 1007.

In so holding, this court feels obliged to suggest (we lack power to decide) that a judgment obtained here where jurisdiction of the partnership is based on service on the single general partner, although enforceable against partnership property in Iowa, might as to such property in Illinois be enforceable only if the courts of Illinois would give full faith and credit to a judgment so obtained in a sister state. Because of the peculiar status of a co-partnership in Illinois, what the attitude of its courts might be in such a situation is more than an academic question. We do not consider it to be decided by Flexner v. Farson, 268 Ill. 435, 109 N.E. 327, affirmed 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250, but it is observed that in Lewis v. West Side Trust & Sav. Bank, 377 Ill. 384, 36 N.E.2d 573, it was held that in order to sue a partnership it is necessary to sue and serve all the partners. In this situation there may be doubt therefore as to the efficacy in Illinois of a judgment if obtained in this forum, against the two co-partnerships based on service on one partner.

If the efficacy of such a judgment was the only question to consider as to the matter of the transfer of this cause under Sec. 1404(a), this court would consider its duty discharged by bringing the matter to the attention of the parties and then proceeding here, if that was plaintiffs' wish, despite our doubt.

But here there are other questions raised by the motions and affidavits which require consideration. Among them, we will include this doubt just discussed because of its relation to the "interest of justice." The other questions relate to "the convenience of parties and witnesses," and present a very practical problem.

■ . In his complete discussion of the doctrine of forum non conveniens, antedating the drafting and enactment of Sec. 1404(a), Title 28 U.S.C.A. Mr. Justice Jackson used language which is equally applicable here. He said in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (decided in 1947; 1404 (a) was in the Act of June 25, 1948):

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. * * *" 330 U.S. at page 507, 67 S.Ct. at page 842.

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses. * * *" 330 U.S. at page 508, 67 S.Ct. at page 843.

Applying the test of discretion to the circumstances calling for its exercise as he suggests, we turn to the record of the pleadings and catalogue what appears to us may justify the grant or denial of the remedy:

(a) The contract declared upon between plaintiffs and defendant copartnerships licensed plaintiffs to solicit and write business in those states where defendants act as general agents for named companies; e. g., defendant United Reserve Ins. Agency was so authorized for National Trav. Ins. Co. of Des Moines in the states of North and South Dakota, Minnesota and Wisconsin and the solicitation and underwriting of plaintiffs would be confined to those states. (Either party was privileged, in any other state where the other "refuses or is unable to be licensed or write insurance," to solicit or write insurance in other companies).

(b) Appointment of agents, subagents and other appointees by plaintiffs were effective only when approved by the defendants.

(c) The defendants were to pay the commissions and salaries specified in the contract.

(d) The defendants agreed to keep the record of all commissions or other payments to plaintiffs, their agents, subagents or appointees and shall "pay all Federal income withholding taxes, social security taxes, license fees or other taxes or fees required by, or in connection with, the writing of insurance under this agency."

(e) Plaintiffs were to report or mail daily to defendants all applications written by them or their agents, accompanied by premium or policy fee remittances.

(f) Defendants were to pay to plaintiffs earned renewal commissions.

(g) Defendants agreed to "maintain true and accurate records of all applications received and insurance written or declined and the commissions or other payments due Second Parties, their agents, sub-agents or other appointees under this agreement."

(h) Defendants were to provide and furnish at their expense all advertising and promotion material.

(i) All records of each party are at all times open to inspection during office hours by the other, or authorized representative.

From this recital it becomes apparent that the records involved in the accounting are in the custody of the defendant co-partnerships whose offices and principal places of business are in Chicago, Ill. The uncontroverted affidavit made by defendant Napier in support of his motion recites: "* * * that the said partnerships maintain a force of approximately 200 agents, from most of whom remittances in the form of cash, checks, or money orders are received regularly each week, and to whom checks in payment for their services are mailed out weekly. That an average of in excess of

1000 items of new business is regularly placed on the books of the aforesaid partnerships each week, and that approximately $4,000.00 in the form of advance premiums is likewise received by the said partnerships, which is immediately remitted to the respective companies; that there are more than 100 books, ledgers, and registers in which items relating to the business of the partnerships since March 15, 1950, are entered, and approximately 20 of these books are in daily use for the entry of the many transactions which occur each day; that the aforesaid books, ledgers, and registers are used for entries of different items such as application fee remittances, advance premiums, renewals, lapses, etc., and are maintained by 10 individuals, all in the employ of the affiant. That the said agencies represent four insurance companies with whom daily transactions are had in the form of remittances and receipts; that the aforesaid books, ledgers, and registers are essential to the operation of the said partnerships, as they are required for the various daily transactions between the aforesaid partnerships, and their various agencies, as well as for the daily transactions between the said partnerships and the insurance companies they represent. That if this cause is to be tried in Iowa, it will be necessary to bring all of the aforementioned records to Des Moines in order to have them available as the trial develops. This will seriously impair, if not cause a suspension of the partnerships' operations. If the trial were held in Chicago, such records as are needed from day to day can be taken from the partnerships' office to the Court, a distance of not more than six blocks, thereby keeping the majority of them available for daily use by the office staff."

It is true that plaintiffs' support their resistance by an affidavit that plaintiffs' records are in Des Moines as are many of their witnesses, that National Travelers Ins. Co., one of those three named in the contract for whom defendants are general agents, has its principal office in Des Moines and that many of plaintiffs' witnesses can not be required to attend in Chicago. However, the primary records that provide the basis for the accounting are those agreed by the contract to be kept by defendants in Chicago, two of the three companies for whom defendants were general agents are of Chicago, and the inability to require the attendance of witnesses at such distance applies equally to either forum. But one plaintiff is an Iowa resident, the other resides in Minneapolis, Minn., and all defendants are residents of Chicago.

If and when plaintiffs prove a breach by defendants of the written contract, then the measure of their damages will be related directly to, if not controlled by, the result of the accounting which will reveal the actual and potential profits of the agency relationship.

If only the former doctrine of forum non conveniens were to be applied, this court would feel it essential as affecting the administration of the courts and the rights of the litigants to dismiss the case and leave to plaintiffs their right to proceed in the other forum. Here by virtue of Section 1404(a), no such drastic action is necessary, because Congress has provided an orderly means to transfer the parties and their cause to another court better able (perhaps in all respects) to serve the convenience of parties and witnesses and to administer justice.

The added certainty of the force and effect of any judgment plaintiffs may obtain in a forum where all partners may now be joined both as such and individually, might well more than balance the inconvenience of attending in the other forum and making some proof by deposition.

The court finds here no indication of harassing or vexatious proceedings, but only an action brought in good faith under existing Iowa laws which permitted service upon the partnerships by reason of the presence in Iowa of a general partner made susceptible to service by the Iowa Rules of Civil Procedure.

█ Whatever the forum, both plaintiffs and defendants must find inconvenience and expense. This court readily accepts "the principle that plaintiff's choice of forum should not be disturbed unless the showing

strongly balances in favor of the transfer." Hansen v. Nash-Finch Co., D.C.Minn.1950, 89 F.Supp. 108. It is mindful too of the statement of Mr. Justice Jackson in Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at page 508, 67 S.Ct. at page 843 "Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. * * *" He balances that statement by this sentence which immediately follows: "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

It is believed that Illinois law will govern as to the contract between these parties. The court to which this cause is transferred "is at home with the state law that must govern the case." In making the determination consideration has been given to the recent very able analysis and discussion by Judge Marsh, Mazinski v. Dight, D.C. W.D.Pa.1951, 99 F.Supp. 192, wherein he declined to order a transfer.

█ It should be said in closing this opinion that considerations of the administration of the courts would make this court hesitate if the question was close, because we reluctantly send to an already burdened court with a docket possibly congested for reasons wholly beyond its control, another case for it to decide. Transfer is a matter residing largely in the discretion of this court. We would believe the exercise of that discretion in favor of dismissal to be required were we controlled by the former doctrine of forum non conveniens. Since Congress has now acted

we believe the exercise of that discretion compels us to recognize and accept the purpose and implications of Section 1404(a). For the reasons outlined, we must grant the defendants' motion to transfer. An order to that effect will be prepared.